IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JUSTIN L. WOOD,

                         **Plaintiff,**

v.                                                                                                 CASE NO. 25-3150-JWL

WICHITA POLICE
DEPARTMENT, ET AL.,

                         **Defendants.**

## MEMORANDUM AND ORDER

This matter is a civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Justin L. Wood, who proceeds pro se and in forma pauperis. It comes before the Court on Plaintiff's second amended complaint, filed on December 1, 2025. (Doc. 15.) For the reasons explained below, this matter will be dismissed without prejudice because the second amended complaint fails to state a plausible claim for relief against a named defendant.

**I. Background**

This matter began on August 1, 2025, when Plaintiff filed his initial complaint. (Doc. 1.) Because Plaintiff proceeds in forma pauperis, the Court was required by statute to screen the complaint and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915 (e)(2). During this screening, the Court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not

1

supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

On August 11, 2025, the Court issued a memorandum and order ("M&O") that recited the facts and claims in the initial complaint as follows:

> In an "Affidavit of Truth" filed with his complaint, Plaintiff explains that in 2022, he purchased some goats to eat grass at his home and to provide meat and milk for him and his family. (Doc. 5, p. 1.) At the time, he was unaware of any laws related to owning goats. *Id.* Not long after, officials from the City of Wichita ("the City") came to Plaintiff's property and informed him that he needed to purchase a license and obtain a permit from the City if he wanted to keep the goats. *Id.* Believing that the United States Constitution and opinions of the United States Supreme Court mean that it is not a crime to keep the goats without a license or permit, Plaintiff obtained neither. *Id.* at 1-2.
>
> On the night of February 12, 2023, while Plaintiff and his family were watching television, two police officers knocked on his door "to talk about the goats." *Id.* at 2. This encounter ended in Plaintiff being issued a citation and given a court date. *Id.* Plaintiff did not attend the court date, so a warrant was issued for his arrest. *Id.* at 3. On another occasion[1], police were called to Plaintiff's home and he was again arrested on a warrant "pertaining to the goats." *Id.* at 4. Plaintiff was taken into custody and was held for over 80 hours until his wife paid the required bond. *Id.*
>
> Plaintiff is a self-employed carpenter. (Doc. 4, p. 2.) On November 10, 2023, Plaintiff was working at a customer's home, and his air compressor set off the home's alarm system. (Doc. 5, p. 3.) Two sheriff's deputies arrived at the home approximately 30 minutes later, confirmed with the homeowner that Plaintiff was there legitimately, and let him get back to work. *Id.* The deputies then ran Plaintiff's name, discovered he had an outstanding warrant, and arrested him. *Id.* They did not allow Plaintiff to put away his tools before arresting him, and they asked the homeowner for permission to tow Plaintiff's vehicle, which contained the rest of his work tools. *Id.* Plaintiff was taken to jail and was not allowed out until he paid a bond. *Id.* Plaintiff sold all of his goats shortly after this incident. *Id.*
>
> On April 1, 2025, an Animal Services Officer came to Plaintiff's home and issued him multiple tickets for owning goats, for failure to license Plaintiff's two dogs, and for failure to provide paperwork for the dogs. *Id.* at 4. Plaintiff believes that the tickets and warrants violated his constitutional rights. *Id.* Plaintiff states that he went to court, and the attachments to the complaint in this matter reflect that

---

[1] Plaintiff asserts that these events occurred "[o]n Friday April 21st." (Doc. 5, p. 4.) He does not indicate a year. The Court notes that April 21, 2025 was a Monday. April 21, 2023 was, however, a Friday. The year in which these events occurred remains unclear.

> in July 2025, Plaintiff attended a hearing in Wichita Municipal Court. *Id.*; (Doc. 1-1, p. 22.) Plaintiff contends that all of his motions were dismissed. (Doc. 5, p. 5.) At the trial, the prosecutor dismissed the charges without prejudice after the sole witness testified that she neither saw nor heard goats on Plaintiff's property. *Id.*; (Doc. 1-1, p. 22.)
>
> Plaintiff names as Defendants in this matter the Wichita Police Department ("WPD"), the Wichita Municipal Court ("the Municipal Court"), the Sedgwick County Sheriff's Office ("SCSO"), and the Sedgwick County Jail ("SCJ"). (Doc. 1, p. 1-2.) Plaintiff brings his claims in this matter under Article 6, § 2 of the Constitution of the United States; the First, Fourth, Fifth, Eighth, and Ninth Amendments to the Constitution; 18 U.S.C. § 242; 42 U.S.C. §§ 1983, 1985, and 1986; K.S.A. 44-1039; K.S.A. 22-2302(b); and K.S.A. 22-2521. (Doc. 1, p. 4.) He claims that the WPD issued him a citation without probable cause and arrested him; the Municipal Court issued a warrant without probable cause and denied him due process; the SCSO arrested him without a lawful warrant; and the SCJ unlawfully detained him, unlawfully strip-searched him, and subjected him to cruel and unusual punishment. *Id.* As relief, Plaintiff seeks redress of his grievances; over $1,000,000.00 in actual and punitive damages[2]; and subpoenas to obtain relevant documents and videos to identify additional violations. *Id.* at 5.

(Doc. 9, p. 1-3 (footnotes in original).)

The M&O explained to Plaintiff that 18 U.S.C. § 242 did not provide him with a private right of action, so he could not, as a matter of law, state a plausible claim for relief based on the violation of that statute. *Id.* at 5-6. Although 42 U.S.C. §§ 1985 and 1986 provide private rights of action, the initial complaint did not assert factual allegations that, if taken as true, could support a plausible claim for relief under either statute. *Id.* at 6-7. Thus, to the extent that Plaintiff sought to bring claims under 18 U.S.C. § 242, 42 U.S.C. § 1985, or 42 U.S.C. § 1986, those claims were subject to dismissal. *Id.* at 5-7.

Next, the M&O turned to Plaintiff's claims under 42 U.S.C. § 1983, explaining that they

---

[2] Specifically, Plaintiff seeks $10,000 for the emotional and psychological harm caused by "[p]olice harassment"; $50,000 in lost wages and $500,000 in punitive damages for harm to his reputation and future business, as well as emotional and psychological damage caused by his being arrested at a customer's home; $200,000 for damage to his reputation and the emotional damage to his wife and children during his arrest and detainment; and $500,000 to compensate him for the time he spent in jail, "strip searches, torture, held for bail, emotional psychological damages, damages to family relationship, loss of trust in [the] judicial system of Wichita and Sedgwick County, [and] Constitutional Violations. [*sic*]" (Doc. 1, p. 5.)

were "subject to dismissal from this matter because he has failed to name a Defendant that may be sued under § 1983." (Doc. 9, p. 7.) The WPD and the Municipal Court are subunits of the City of Wichita and, as such, are not suable under § 1983. *Id.* at 7-8. Similarly, the SCJ is not a "person" subject to suit under § 1983. *Id.* at 8. Regarding the SCSO, Plaintiff had not alleged facts showing that any identified SCSO employee committed a constitutional violation or that a county policy or custom was the moving force behind that constitutional violation, as required to state a plausible claim against it. *Id.* at 8.

Because all of the Defendants named in the initial complaint were subject to dismissal, the M&O concluded, the entire complaint was subject to dismissal for failure to state a plausible claim for relief. *Id.* The Court granted Plaintiff time in which to file a complete and proper amended complaint that cured the deficiencies. *Id.* at 8-9. In the interest of efficiency, the M&O pointed out additional deficiencies in the initial complaint so that Plaintiff could ensure they did not recur in any amended complaint he chose to file. *Id.* at 9-13. Specifically, the M&O discussed the rules governing joining claims and defendants in one case, the requirement of specific and sufficient factual allegations to support claims, Rule 8 of the Federal Rules of Civil Procedure, and the applicable statute of limitations. *Id.*

Plaintiff timely filed his amended complaint on October 14, 2025. (Doc. 13.) The Court conducted the statutorily required screening of the amended complaint. In a second M&O issued on October 28, 2025, the Court described the amended complaint as follows:

> The amended complaint names as Defendants Wichita Animal Maintenance Officer Caralee Miller and Wichita City Prosecutor Stephen P. Young. (Doc. 13, p. 1-2.) As the background of this case, Plaintiff alleges in the amended complaint that Defendant Miller came to his home on April 1, 2025, talked with him for a bit, then issued him a citation related to his allegedly owning goats. *Id.* at 2. Around April 20, 2025—before the scheduled court date for the citation—Plaintiff was arrested "for the charge." *Id.* He was taken to jail and held for 4 days until his bail was paid. *Id.* At the ensuing trial on the citation, Defendant

4

> Miller admitted that she had not seen or heard any goats at his home. *Id.* The charges against Plaintiff were dismissed. *Id.*
>
> In Count I of this matter, Plaintiff asserts the violation of his Fourth Amendment right to be free from unreasonable searches and seizures. *Id.* at 3. As supporting facts for Count I, Plaintiff alleges that, without having any evidence to support doing so, Defendant Miller issued a citation that stated under penalty of perjury that Plaintiff had broken the law. *Id.* Plaintiff further alleges that the citation "caused [him] to be arrested, jailed, and held for bail." *Id.* In Count II of this matter, Plaintiff asserts that life, liberty, and property were taken from him. *Id.* As supporting facts for Count II, Plaintiff alleges that he "was arrested, and held for bail." *Id.* As relief in this matter, Plaintiff seeks a remedy for his incarceration and "costs to represent." *Id.* at 5.

(Doc. 14, p. 2-3.)

The second M&O explained that Defendant Young was subject to dismissal because there were no facts asserted in the amended complaint that established he had caused a violation of Plaintiff's constitutional rights and, as a prosecutor, Defendant Young is immune from suit for damages when the claims are based on acts that occur in his role as a prosecutor. *Id.* at 4. It further explained that the Court liberally construed Count I as alleging a Fourth Amendment claim of malicious prosecution, but it could not determine the federal right at issue in Count II. *Id.* at 5-6. Because the amended complaint did not set forth facts to support Count II or explain how a named Defendant personally participated in the violation, Count II was subject to dismissal for failure to state a claim on which relief can be granted. *Id.* at 6. The second M&O reminded Plaintiff that, as stated in the first M&O:

> "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 Fed. Appx. 757, 759 (10th Cir. 2009)(quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013). . . . Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).
>
> Rule 8 of the Federal Rules of Civil Procedure requires that a complaint "contain . . . a short and plain statement of the claim showing that [the plaintiff] is

5

> entitled to relief." The purpose of Rule 8 "is 'to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief.'" *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1998) (quoting *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1371 (10th Cir. 1979)).

(Doc. 14, p. 6 (quoting Doc. 9, p. 10-11.) Because Count II of the amended complaint did not comply with Rule 8, it was subject to dismissal. (Doc. 14, p. 7.)

The second M&O concluded:

> After screening the amended complaint, the Court finds as follows. Defendant Young is subject to dismissal because Plaintiff has failed to state a plausible claim for relief against him. Count II of the amended complaint is subject to dismissal because it does not state a plausible claim for relief against a named Defendant. Plaintiff therefore has three options.
>
> First, Plaintiff may file a written response to this order stating that he wishes to voluntarily dismiss Defendant Young from this matter and he wishes to voluntarily dismiss Count II of this matter. If Plaintiff files a written response to this order that so states, the Court will dismiss Defendant Young and Count II and the case will proceed on Count I and against Defendant Miller only.
>
> Second, Plaintiff may file a written response to this order showing good cause why Defendant Young should not be dismissed from this matter and/or why Count II is not subject to dismissal. If Plaintiff chooses this option, the Court will review his written response and issue further orders as necessary. Plaintiff is cautioned that if his written response does not show good cause, Defendant Young and/or Count II may be dismissed without further prior notice to Plaintiff.
>
> Third, if Plaintiff wishes to further amend his complaint to clarify the legal basis for Count II, add factual allegations to support Count II, and/or add factual allegations to support a plausible claim against Defendant Young, he may file a complete and proper second amended complaint. The Court will direct the clerk to provide Plaintiff with the required form for filing a second amended complaint in case Plaintiff chooses to do so. Plaintiff is advised that if he files a second amended complaint, the Court will conduct the statutorily required screening of the second amended complaint and issue further orders as necessary.

(Doc. 14, p. 7-8.) Plaintiff was granted time in which to comply with the second M&O. *Id.* at 9.

On December 1, 2025, Plaintiff timely filed a second amended complaint. (Doc. 15.) The

6

Court has now conducted the statutorily required screening of the second amended complaint.

## II. Nature of the Matter before the Court

The second amended complaint names as Defendants the City of Wichita, Wichita Animal Control Officers Kaylee Wallis and Caralee Miller, Wichita City Judges Jane Doe and (fnu)[3] Burdges, Officers Urban and Brazelton of the Sedgwick County Sheriff's Office, and City Prosecutor Stephen Young. (Doc. 15, p. 1-2.) As the background of the case, Plaintiff states that a few months after he bought some goats, WPD officers began "showing up" to tell him to get rid of the goats and "[o]ne night two female officers showed up and left [him] a ticket for owning goats." *Id.* at 2. Plaintiff went to court and unsuccessfully sought dismissal of the ticket, after which he missed a court date and a warrant issued for his arrest. *Id.* Plaintiff believes that Defendant Judge Jane Doe issued the arrest warrant. *Id.*

Plaintiff further alleges that during pretrial hearings in May and June 2023, Judge Doe denied Plaintiff's motions for a jury trial and his motion questioning jurisdiction. *Id.* at 6-7. At this point, Plaintiff recognized Judge Doe as having presided over a 2021 case in traffic court that involved Plaintiff. *Id.* at 7. Plaintiff explains that in the 2021 case, Judge Doe had found Plaintiff guilty based only on an officer's word and she "charge[d] him $500 to appeal the case," telling him: "The Constitution has no place in my court." *Id.*

On or around November 10, 2023, Plaintiff was working at a customer's home in a very upscale neighborhood when an alarm sounded. *Id.* at 7. Plaintiff spoke to the homeowner, who called the security company to turn off the alarm. *Id.* Two sheriffs from the SCSO—apparently Defendant Urban and Defendant Brazelton—arrived at the home and Plaintiff explained to one of them what had happened. *Id.* Defendant Urban told Plaintiff to sit on his truck's bumper, a move

---

[3] The term "(fnu)" is an abbreviation for "first name unknown."

Plaintiff characterizes as custodial arrest. *Id.* at 7-8. Plaintiff refused to give Defendant Urban his name, but Defendant Urban let Plaintiff go after obtaining the homeowner's phone number from Plaintiff. *Id.* at 8. Plaintiff went back to work. *Id.*

Shortly thereafter, Defendants Urban and Brazelton came into the backyard and arrested Plaintiff, handcuffed him, and took him to jail, where he was strip-searched. *Id.* Plaintiff asserts that because he initially objected to the strip search, his hands were handcuffed behind his back and he was placed into a small cell that smelled like urine. *Id.* Plaintiff was eventually moved to a pod, then a release room, and he was released around 10:00 p.m. *Id.* at 9. He asserts that his wife arrived to pay his bail at around 5:30 p.m. but she wasn't allowed to do so until around 7:00 p.m. and, even then, it was another three hours before he was released. *Id.* Within 2 days of his release, Plaintiff became ill, which he attributes to the "extremely dirty cells" he was held in at the jail. *Id.* at 10. He also asserts that he lost respect from his client and the client's neighbors and the arrest irreversibly damaged his reputation and image. *Id.*

On April 1, 2025, Defendant Miller, an animal control officer, came to Plaintiff's home. *Id.* at 10. Although Plaintiff spoke with Defendant Miller, he refused to tell her whether he owned goats or had any goats on the property. *Id.* Instead, Plaintiff replied by stating "'I plead the Fifth' or 'I am not at liberty to say,' which seemed to irritate [Defendant] Miller," who issued Plaintiff a citation. *Id.* After Plaintiff went inside his home, additional police vehicles arrived and spoke to his neighbors. *Id.* at 11.

On the night of April 22, 2025, police came to Plaintiff's home while he "was having a disagreement with his children." *Id.* Despite stating that Plaintiff had done nothing wrong, as soon as Plaintiff stepped onto his porch, officers arrested him "for two warrants from the goat citations." *Id.* Plaintiff was jailed for 4 days, lost his job, and "lost respect as the father of his family." *Id.*

8

Plaintiff filed a motion to dismiss the case and a habeas corpus motion, both of which Defendant Judge Burdges "ignored." *Id.* The case proceeded to trial, where Defendant Miller was the sole witness and testified that she neither saw nor heard any goats at Plaintiff's property. *Id.* at 12. After Defendant Miller was cross-examined, Defendant Young, in his role as prosecutor, dismissed the case with prejudice. *Id.* Plaintiff sought reimbursement of costs and fees incurred in defending himself, which Judge Burdges denied. *Id.*

In Count I of the second amended complaint, Plaintiff asserts the violation of his Fourth Amendment rights to be secure from unreasonable searches and seizures. *Id.* at 3. As the supporting facts for Count I, Plaintiff states:

> Mr. Wood received a citation on Feb 12, 2023 at his home for property he allegedly owned absent proof. [His] name was searched while he was working at a customer's home when it was unreasonable to search his name, or to arrest him with an invalid misdemeanor warrant. Mr. Wood was seized for an unconstitutional warrant which lacked reasonableness considering the charge on two separate occasions – 11/1-/23, 4/22/25.

*Id.* at 3, 13.

In Count II, Plaintiff again asserts the violation of the Fourth Amendment, this time focusing on the probable cause requirement for the issuance of warrants. *Id.* at 3. As supporting facts for Count II, Plaintiff asserts that Defendant Young brought charges against him without probable cause and that Judges Doe and Burdges "both signed a warrant" without probable cause that Plaintiff had committed a crime. *Id.* at 3, 13.

In Count III, Plaintiff asserts the violation of the Fifth and Fourteenth Amendments' protections involving "the right to life, liberty, and property[ a]nd Equal Protection of all his rights." *Id.* at 4. As supporting facts for Count III, Plaintiff states that he "was arrested, held for bail, and suffered great harm to his confidence, image and respect as a father and as ann entrepreneur to his company." *Id.* As relief, Plaintiff seeks $1,200,000.00 for reputational harm

and lost wages and he generally requests declaratory and injunctive relief. *Id.* at 5.

### III. Discussion

The standards under which this Court screens Plaintiff's second amended complaint are set out above and will not be repeated in full here. The Court assures Plaintiff that it has liberally construed his pro se second amended complaint, but it reminds Plaintiff that it does not act as Plaintiff's advocate or construct claims on his behalf. (*See also* Doc. 9, p. 11; Doc. 14, p. 3.)

**A. Rule 8**

As Plaintiff was informed in the first M&O and reminded in the second M&O, in order to state a plausible claim for relief, a complaint must identify specific actions taken by specific defendants. (Doc. 14, p. 6 (quoting Doc. 9, p. 10-11).) It must describe "exactly who is alleged to have done what to whom." *See Stone v. Albert*, 338 Fed. Appx. 757, 759 (10th Cir. 2009) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint must give opposing parties fair notice of the claims against them and it must contain sufficient allegations, if taken as true, to show that the plaintiff has a legal right to relief. (*See* Doc. 9, p. 10-11; Doc. 14 p. 6.) "When a plaintiff fails to comply with Rule 8, this Court is authorized to dismiss the complaint." (Doc. 9, p. 11 (citation omitted).)

Contrary to the requirements of Rule 8, the second amended complaint does not provide certain named Defendants the fair notice of the claims against them. In the portion of the second amended complaint form designated for Plaintiff to "[b]riefly state the background of your case," Plaintiff has written a lengthy narrative. (Doc. 15, p. 2, 6-13.) Yet in the portions of the second amended complaint for setting forth "all of the facts [Plaintiff] consider[s] important, including names of persons involved, places and dates," and for "[d]escrib[ing] exactly how each defendant is involved" in Count I, Count II, and Count III, Plaintiff fails to mention by name any Defendants

10

other than Defendants Young, Doe, and Burdges. (*See* Doc. 15, p. 3-4, 13.)

The failure to state which Counts involve Defendants Miller, Wallis, Urban, Brazelton, and the City of Wichita means that the second amended complaint fails to give those Defendants fair notice of the constitutional violations in which Plaintiff believes each participated or the Counts in the second amended complaint to which each Defendant would be required to respond if this case proceeds to service. This violates Rule 8. Thus, Defendants Miller, Wallis, Urban, Brazelton, and the City of Wichita are subject to dismissal.

**B. Count I**

To the extent that Count I of the second amended complaint is based on events that occurred in February 2023, it must be dismissed because, as previously explained to Plaintiff, those events fall outside the two-year statute of limitations applicable to claims brought under 42 U.S.C. § 1983. (*See* Doc. 9, p. 12-13.) To the extent that Count I is based on events that occurred in November 2023 and April 2025, Plaintiff makes only conclusory assertions about the violation of his rights. He alleges only that his "name was searched while he was working at a customer's home when it was unreasonable to search his name, or to arrest him with an invalid misdemeanor warrant" that "lacked reasonableness considering the charge." (Doc. 15, p. 3, 13.)

Even liberally construing the second amended complaint, Plaintiff does not identify a named defendant who "searched" his name without reason to do so or otherwise engaged in the conduct on which Count I is based. Thus, it remains unclear which Defendant is implicated in Count I and the second amended complaint would not give fair notice to any Defendants of a claim against him or her. As such, Count I violates Rule 8.

In addition, at no point in the second amended complaint does Plaintiff allege facts that sufficiently support his conclusory assertion that his November 2023 arrest on an outstanding

warrant was unreasonable. Plaintiff mentions arrest warrants twice in the facts alleged in the second amended complaint: first, he refers to the arrest warrant issued by Judge Doe after Plaintiff failed to appear in court and second, he briefly refers to being arrested in April 2025 on "two warrants from the goat citations." (Doc. 15, p. 2, 11.) He does not explain the basis for the "warrants from the goat citations." Even liberally construing Count I and the alleged facts that appear to relate to Count I, this Court cannot conclude that Count I states a plausible claim for relief against a named Defendant. Count I is therefore subject to dismissal.

### C. Count II.

In Count II, Plaintiff alleges that Defendant Young violated his Fourth Amendment rights by filing charges against Plaintiff without probable cause to do so. As explained in the second M&O, Defendant Young is immune from liability for actions he took in his role as a prosecutor, including preparing for the initiation of judicial proceedings or for trial. (*See* Doc. 14, p. 4-5.) Thus, Defendant Young must be dismissed as a defendant in this action. *See Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) ("[I]t is well-established law that '[p]rosecutors are entitled to absolute immunity' for anything they do in their role as advocates, including their 'decisions to prosecute.'").

Similarly, Judges Doe and Burdges enjoy absolute immunity from civil suits based on actions taken in their judicial capacity, except where they act in the clear absence of all jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). The facts alleged in the second amended complaint that relate to Judges Doe and Burdges describe only actions taken in their judicial capacity, such as denying motions and issuing arrest warrants. (Doc. 15, p. 2, 6-7, 11-13.) Thus, Judges Doe and Burdges also must be dismissed as defendants in this action. Because the supporting facts for Count II implicate only these three Defendants,

their dismissal means that Count II fails to state a plausible claim on which relief can be granted and it is subject to dismissal in its entirety.

### D. Count III

Count III of the second amended complaint asserts that Plaintiff's rights under the Fifth and Fourteenth Amendments were violated; specifically, Plaintiff identifies "the right to life, liberty, and property[ a]nd Equal Protection of all his rights." (Doc. 15, p. 4.) As supporting facts, Plaintiff relies upon his arrest, being held for bail, and suffering harm as a result. *Id.* This is similar to Count II of the amended complaint, in which Plaintiff argued "that life, liberty, and property was taken from him when he was arrested and held for bail." (*See* Doc. 14, p. 6 (describing Count II of the amended complaint).) To his credit, Plaintiff has complied with the second M&O's guidance to some extent and has identified in his second amended complaint the precise constitutional provisions he believes were violated. (Doc. 15, p. 4.)

However, the second M&O also explained to Plaintiff that Count II of the amended complaint was subject to dismissal because "he has not adequately identified a named Defendant who violated the right[] and he has not alleged sufficient facts to show the right was violated by that Defendant." (Doc. 14, p. 7.) Count III of the second amended complaint suffers from these same deficiencies. (*See* Doc. 15, p. 4.) Thus, Count III is subject to dismissal for failure to state a plausible claim on which relief could be granted.

### IV. Conclusion

The Court has granted Plaintiff multiple chances to cure the deficiencies in his pleading that leave it subject to dismissal, but Plaintiff has not done so. Moreover, the Court has previously identified for Plaintiff certain deficiencies in the initial complaint and the amended complaint that continue to appear in the second amended complaint. The Court thus declines to allow Plaintiff

the opportunity to further amend his complaint and will dismiss this matter without prejudice for failure to state a plausible claim on which relief could be granted. *See Jensen v. West Jordan City*, 968 F.3d 1187, 1202 (10th Cir. 2020) (explaining that refusing leave to amend is justified when there is "'failure to cure deficiencies by amendments previously allowed'").

**IT IS THEREFORE ORDERED** that this matter is dismissed without prejudice for failure to state a claim on which relief can be granted.

**IT IS SO ORDERED.**

DATED:  This 12th day of December, 2025, at Kansas City, Kansas.

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
United States District Judge